## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Case No. 12 CR 446** |
| **v.** | **Hon. Harry D. Leinenweber** |
| **MICHELE DICOSOLA,** | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Defendant's Motion to Sever [ECF No. 195] is granted. Defendant's Motion for Disclosure of Exculpatory and Impeaching Evidence [ECF No. 196] is denied. Defendant's Motion for Disclosure of Signed Indictment and Grand Jury Minutes [ECF No. 197] is granted in part. The Government shall submit, for *in camera* review, competent proof that the indictment in this case was returned by a Grand Jury whose term had not expired. Defendant's Motion to Dismiss Count Two of the Indictment [ECF No. 198] is granted.

## I. BACKGROUND

Defendant Michele DiCosola (the "Defendant") stands accused of committing a variety of acts to defraud others and enrich himself. The allegations that follow are drawn exclusively from the eight-count indictment.

The first set of charges relates to fraudulent applications for loans. Defendant is alleged to have served as President of a business called "CD Shape Cutters." When acting in that capacity in

July 2008, he submitted an application to Amcore Bank for two business loans (in the amounts of $250,000 and $450,000). To induce the bank to approve the application, he included false personal and business tax returns from 2006 and 2007 that inflated his income. The next month, Defendant submitted a mortgage application to CitiMortgage so that he could refinance his personal home mortgage and obtain a home equity loan. He supplemented his application in September 2008 by faxing CitiMortgage the same false tax returns from 2007 and 2008 that overstated his income. These loans were approved and funded shortly thereafter. Despite his guarantee of full and punctual payment, Defendant defaulted on the loans. Counts I and II charge bank fraud in violation of 18 U.S.C. § 1344 – one count for each business loan. Count III alleges that Defendant made a false statement to a bank in violation of 18 U.S.C. § 1014 in his pursuit of the business loans. Count IV charges wire fraud under 18 U.S.C. §§ 1343 and 1342 for the fax transmission of the false 2006 and 2007 tax returns used to obtain the personal loans.

Next, Counts V and VI charge Defendant with filing false claims against the United States in violation of 18 U.S.C. § 287. The indictment accuses Defendant of filing two false tax returns on September 15, 2009 – one for himself and one on behalf of behalf of taxpayer P.W. The fraudulent returns claimed entitlement to tax refunds of approximately $5.5 million and $385,000. Although not mentioned in the indictment, the Court understands that Defendant's claim for a tax refund was based on an original issue discount

("OID") tax theory whereby a filer claims that numerous debts entitle him to a large refund from the IRS.

Finally, the indictment brings two Counts for bankruptcy fraud related to Defendant's two bankruptcy cases.  First, on June 14, 2010, Defendant filed a Chapter 11 petition wherein he misrepresented whether he had closed financial accounts within the past year and whether he had served as an officer, director, partner, or managing director of a business within the past six years.  Then, on November 2, 2010, Defendant filed another Chapter 11 petition in which he made those same misrepresentations.  Counts VII and VIII relate to these two false petitions.

The case is scheduled for trial in September 2014.  Now pending before the Court are Motions to Sever, for Disclosure of Exculpatory and Impeaching Evidence, for Disclosure of the Signed Indictment and Grand Jury Minutes, and to Dismiss – all filed by Defendant.

## II.  MOTION TO SEVER

Defendant argues that the charges in this case must be severed into three groups:  Counts I-IV for bank fraud, Counts V-VI for tax fraud, and Counts VII-VIII for bankruptcy fraud.  Rule 8(a) allows the Government to charge multiple counts in a single indictment if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  FED. R. CRIM. P. 8(a).  "Rule 8 should be broadly construed in order to increase judicial efficiency and to avoid costly and duplicative trials."  *United*

*States v. Freland,* 141 F.3d 1223, 1226 (7th Cir. 1998). The Government does not argue that the charges are based on the same act or transaction. Thus, of the grounds for joinder listed in Rule 8(a), only the first and third are at issue. If joinder is proper under Rule 8, then the Court will consider whether the charges should be severed under Rule 14(a) to avoid prejudice to the defendant.

### A.  Same or Similar Character

The Seventh Circuit has articulated two different approaches, both valid, to determining whether charges are "of the same or similar character." First, different charges are "of the same or similar character" if they "refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *United States v. Turner,* 93 F.3d 276, 283 (7th Cir. 1996). Second, even if they are separate in time, charges can still be of the same or similar character if they share "categorical, not evidentiary, similarities." *Id.* Either way, the charges need not share an "identical statutory origin." *United States v. Alexander,* 135 F.3d 470, 476 (7th Cir. 1998).

Searching first for categorical similarities, the Court notes that all of the charges in this case involve a false statement made for financial gain. But how much deeper do the similarities extend? For the bank fraud charges, Defendant misrepresented his income and used false tax returns from 2007 and 2008 as verification. The tax fraud charges are based on false tax returns filed in September 2009 that listed numerous debts; there is no indication that Defendant

misrepresented his income in those tax returns.  In the bankruptcy filings, Defendant is alleged to have misrepresented his financial affairs by omitting details regarding closed accounts and his service as an officer of a business entity.  Thus, the three sets of charges relate to three different types of misrepresentations:  one about Defendant's income, another about his debts, and a third about his business affairs.

"Financial gain" is similarly broad and misleading.  The different misrepresentations alleged in this case were in furtherance of attempts to obtain different types of financial help from different entities:  the loan applications requested funds on credit from private banks, the tax returns claimed entitlement to cash refunds from the IRS, and Defendant's bankruptcy petitions asked for judicially-imposed relief from various creditors.  Disparate charges can always be made to appear similar if the descriptive language employed is broad enough.  Therefore, to measure whether charges are similar categorically, the Court must look for *meaningful* similarities.  *United States v. Kaquatosh,* 227 F.Supp.2d 1045, 1047 (E.D. Wis. 2002) (explaining that "courts must be careful not to find similarity at a level of generality so high as to drain the term of any real content") (internal quotation omitted).  In this case, the similarities are more superficial than substantial.

Other important differences are apparent.  First, the misrepresentations related to different transactions: the bank fraud charges derive from Defendant's loan applications, the tax fraud

charges stem from his false claims for refunds, and the false bankruptcy filings arise out of separate bankruptcy cases. Second, the misrepresentations were separated in time: the acts underlying the bank fraud charges took place between July 2008 and September 2008, the false tax returns were filed in September 2009, and the false bankruptcy filings were submitted in June 2010 and November 2010. The indictment alleges that the acts underlying the bank fraud charges were in furtherance of a scheme that continued until July 2010. But it is not clear what actions, other than Defendant's default on those loans, took place after September 2008; by then, Defendant had already made the false statements and obtained the loans. *United States v. Anderson,* 188 F.3d 886, 888 (7th Cir. 1999) (explaining that "the crime of bank fraud is complete when the defendant places the bank at a risk of financial loss, and not necessarily when the loss itself occurs"). The Government must do more than invoke the concept of a scheme in order to put forth a plausible claim of continuing misconduct. The fact that the misrepresentations relate to different transactions separated in time weighs against joinder.

To justify joinder, the Government relies on the broad similarity mentioned above: that the charges all involve a knowingly false representation. But none of the cases cited by the government rely on a unifying strand that thin. In *United States v. Koen,* for example, joinder was proper where the act of embezzlement in one count was relevant to "the establishment of either motive or intent

for all the other charges." *United States v. Koen,* 982 F.2d 1101, 1112 (7th Cir. 1992). And, in *United States v. Alexander,* joinder was proper where three disparate counts all related to actions taken to enhance a single enterprise: (1) fraud on a mortgage application was committed to obtain the residence out of which the defendant would operate the business, (2) insurance fraud represented an attempt to obtain additional money for the business by fraudulent means, and (3) bankruptcy fraud charges both resulted from the operation of the business itself and "were designed to keep the business afloat by preventing the mortgage company from foreclosing on the property where the business was operated." *United States v. Alexander,* 135 F.3d 470, 476 (7th Cir. 1998). While these cases may be relevant to the Court's analysis of whether joinder is proper on the basis of a "common scheme or plan" (discussed below), they do not show that charges may be joined as similar merely because they all involve a false statement.

One district court in this circuit has explained that where the alleged offenses involve different victims, it is not enough that the offenses "generally involve fraud of some sort or the ultimate motive of obtaining money from another." *United States v. Jenkins,* 884 F.Supp.2d 789, 792 (E.D. Wis. 2012). This rule makes sense: prohibitions against false statements are ubiquitous in the federal criminal code, and ambitions of financial gain can be found in many of those who disobey the law. The joinder rules call for more meaningful categorical similarities. *Turner,* 93 F.3d at 283-84 (two

offenses were "categorically related" where the "indictment alleges the violation of two closely-related statutory prohibitions, and each count involves the same controlled substance); *United States v. Patel,* No. 01-CR-716, 2002 WL 1611593, at *2 (N.D. Ill. July 18, 2002) (allowing joinder of "crimes of theft perpetrated by a single person who used her position to exploit a single victim, her employer").

In short, the Court's search for meaningful categorical similarities among these charges has yielded none. The indictment charges different types of fraud based on different misrepresentations made to different victims to obtain different monetary benefits in separate transactions. Thus, the Court cannot say that the charges share categorical similarities. *Jenkins,* 884 F.Supp.2d at 792 (severing as dissimilar counts that had "little or nothing in common" except the "defendant's alleged motive to collect money to which he [was] not entitled").

Turning to evidentiary similarity, the Government argues that Defendant's financial difficulties provided a common motive for all of the Counts alleged in the indictment, and thus the Government will call a financial investigator and other witnesses to testify to Defendant's financial struggles and the authenticity of various records. But as described in *Jenkins* and discussed above, an ultimate motive of financial gain is too broad to justify joinder, and thus evidentiary overlap related to that motive is similarly unhelpful. Again, however, whether Defendant's actions flowed from

a common motive may inform the "common scheme or plan" analysis that follows in Part B.

The Government also argues that evidence of Defendant's financial hardship relates directly to the charged conduct because it helps prove the falsity of the statements made to obtain the loans and the materiality of the false statements in the bankruptcy filings. As noted at the outset, evidentiary overlap can serve as a basis for finding charges to be "of the same or similar character" only if the acts underlying those charges "occurr[ed] over a relatively short period of time." *United States v. Turner,* 93 F.3d 276, 283 (7th Cir. 1996). In *Turner,* the Seventh Circuit indicated that fourteen months was too long. In *United States v. L'Allier,* however, the court noted "the relative closeness in time" of two crimes separated by six months. *United States v. L'Allier,* 838 F.2d 234, 241 (7th Cir. 1988). The acts underlying the bank fraud charges preceded the first fraudulent bankruptcy filing by twenty-one months, even longer than in *Turner*. As discussed above, while the indictment does invoke the idea of a bank fraud scheme, it does not mention a single act that took place after September 2008 that would suggest that Defendant's bank fraud misconduct was continuing. Thus, the bank fraud and the bankruptcy fraud are too distant in time to allow for joinder based on evidentiary overlap. The false tax returns are sandwiched in the middle, but there is no indication that the evidence needed to establish the tax fraud overlaps with the evidence needed to prove the other charges.

Thus, joinder cannot be sustained under either of the Seventh Circuit's formulations of the "same or similar character" category.

## B.  Common Scheme or Plan

Charges are part of the same "common scheme or plan" if they share a "logical relationship," such as where one charge serves as a "logical precursor" for the other. *United States v. Woody,* 55 F.3d 1257, 1267 (7th Cir. 1995).  In *Woody,* for example, a charge of assault was joined properly to a charge of possession of stolen mail because "[e]vidence of the defendant's first arrest for possession of stolen mail and the subsequent surveillance operation was relevant to establish his motive to assault the inspectors in his ill-fated attempt to avoid apprehension." *Id.*  The court explained that both offenses were part of a scheme "to cash forged checks stolen from residential mailboxes without detection from law enforcement." *Id.* In *United States v. Anderson,* charges of tax evasion were joined properly with charges of mail fraud, RICO bribery, and extortion affecting interstate commerce because "[t]he tax evasion count was based on [the defendant's] failure to report the income from [the misconduct charged in the other counts]." *United States v. Anderson,* 809 F.2d 1281, 1288 (7th Cir. 1987).  But in *United States v. Creamer,* Judge James Moran of this Court severed independent bank fraud and tax evasion charges because they shared no logical or evidentiary link and "the government d[id] not contend that the tax violations were based on income produced by the bank fraud." *United*

*States v. Creamer,* 370 F.Supp.2d 715, 732 (N.D. Ill. 2005), vacated in part on other grounds on reconsideration, No. 04-CR-281-1, 2006 WL 2037326 (N.D. Ill. April 4, 2006).

Just as in *Creamer,* where "the face of the indictment fail[ed] to link the two groups of offenses," the tax fraud and bankruptcy fraud charges in this case do not incorporate any of the previous paragraphs that allege misconduct (they incorporate only general statements, such as Defendant's name and address and the operations of various government agencies). *Creamer,* 370 F.Supp.2d at 730. Indeed, this is not the typical case where the tax fraud charges relate to the defendant's failure to report income. *See, e.g., Anderson,* 809 F.2d at 1288 ("Joinder of a tax evasion count is appropriate when it is based upon unreported income flowing directly from the activities which are the subject of the other counts."). Rather, the bank fraud charges relate to Defendant's misrepresentations in the loan application process, and the tax fraud charges arise out of his claim for a $5 million tax refund based on a bogus OID tax theory. There is no basis to say that the bank fraud is a logical precursor to the tax fraud, as Defendant could have committed either one without committing the other.

A similar situation was presented in *United States v. Randazzo,* in which the president and majority shareholder of a shrimp company was charged with a variety of misconduct. *United States v. Randazzo,* 80 F.3d 623 (1st Cir. 1996). The defendant was indicted on charges of making false statements to the United States because he had failed

to disclose on the shrimp container's label that the company used certain banned substances when it produced the shrimp. *Id.* at 626. The substances "increased profits by altering the weight or color of the shrimp." *Id.* Meanwhile, the defendant siphoned off corporate cash for his own use and misreported his theft as a corporate expense, for which he was charged with causing the company to file false corporate tax returns. *Id.* at 626-27. The First Circuit held that the two groups of charges were not joined properly – even though tax fraud charges often accompany charges of filing false statements – because "it was pure happenstance whether the overstated expenses happened to reduce legal income or illegal income of the Company." *Id.* at 627. In other words, the tax misconduct of misappropriating cash that was listed as an expense could have taken place regardless of whether the company was also increasing its profits by failing to disclose its use of a banned product.

While it may often be the case that tax fraud charges connect to a common scheme or plan that includes making false financial statements, this case involves tax fraud charges that do not relate to underreported income or previous false statements. The same reasoning applies to the bankruptcy fraud counts: if Defendant was experiencing financial troubles, as the Government contends, then Defendant could have made the exact same misrepresentations regarding his financial affairs in his bankruptcy petition even if he had not made false statements in support of his loan application or filed fraudulent tax returns. None of these crimes served as a logical

precursor for another or depended on another for its success. *United States v. Hubbard,* 61 F.3d 1261, 1270 (7th Cir. 1995) (firearm possession and narcotics charges were not joined properly because the fact that the defendant carried guns "tells us little about his distribution of narcotics nearly a year and a half earlier, and vice versa").

It might appear that joinder would be justified under the common scheme or plan category based on the Government's contention that all of Defendant's actions flowed from a single motive: alleviating his financial hardship. Some courts have found seemingly disparate charges to be similar where the acts underlying one charge provided a motive for subsequent acts that led to other charges (such as where one perpetrates a crime and then later commits others to cover-up or mitigate the first). *See, e.g., Koen,* 982 F.2d at 1112 (joinder proper where the act of embezzlement in one count was relevant to "the establishment of either motive or intent for all the other charges"); *United States v. Dominguez,* 226 F.3d 1235, 1242 (11th Cir. 2000) (drug offenses and mortgage fraud charges were joined properly because "[c]oncealing income from the drug activity was the motive for the mortgage fraud"). But this Court is aware of no authority for finding that different charges relate to the same scheme just because they share a similar uncharged or non-criminal motive, especially when it is a generic one like "financial gain." Joinder therefore cannot be maintained under the "common scheme or plan" category.

## C.  Conclusion

In light of the foregoing, joinder was improper under Rule 8. In addition, as in *Creamer,* "[t]he dearth of shared evidence suggests that severance will not lead to wasted judicial resources." *Creamer,* 370 F.Supp.2d at 731.  The three groups of charges arise from different bodies of law, so separate juries will be able to consider separate evidence and separate instructions. *United States v. Coleman,* 22 F.3d 126, 132 (7th Cir. 1994) (noting that "separate counts that for the most part depend on separate evidence save fewer steps when tried together").  Therefore, the Court severs the charges into three groups:  Counts I-IV for bank fraud, Counts V-VI for tax fraud, and Counts VII-VIII for bankruptcy fraud.

## III.  DISCLOSURE OF IMPEACHING AND EXCULPATORY INFORMATION

Defendant has moved to compel the Government to disclose any evidence or information that would tend to exculpate Defendant of the charged offenses or mitigate the possible punishment. *See Brady v. Maryland,* 373 U.S. 83 (1963); *Giglio v. United States,* 405 U.S. 150 (1972).  Defendant has listed a variety of evidence that he would like the Government to produce.

This Court has already ruled on a prior Motion from Defendant seeking to obtain exculpatory and impeachment evidence pursuant to *Brady* and *Giglio*.  When it denied the Motion, the Court explained that the Government had "acknowledged its obligations to provide

discovery" and assured Defendant and the Court that it would "comply with *Giglio* and *Brady*."  ECF No. 125 at 12-15.

Defendant emphasizes that *Brady* evidence is due on demand.  *See Brady,* 373 U.S. at 88.  In response, the Government affirms that it will produce exculpatory evidence "should any such evidence come to the Government's attention."  ECF No. 201 at 4.  The Government has inquired with the IRS regarding any notes of communications with the Defendant or his representatives – information that Defendant requests specifically – and will produce any discoverable responses that it receives from the agency.  The Court takes from these representations that the Government does not have any of the information requested in the Motion.  If that is not the case, the Government should either produce the information or file a statement indicating why it believes that the evidence does not qualify for disclosure under *Brady.*

As to *Giglio,* the Government affirms that it is aware of and will comply with its obligation to disclose information that impeaches its witnesses.  The Government indicates that it will do so within two weeks of trial, which this Court held previously was sufficient.  ECF No. 125 at 14-15.  For these reasons, and those stated in the Court's opinion dated February 12, 2013, Defendant's Motion [ECF No. 196] is denied.

## IV.  DISCLOSURE OF SIGNED INDICTMENT

Defendant has requested a copy of the signed indictment and the grand jury minutes.  Defendant made a similar request, back when he

was proceeding *pro se,* when he asked for a copy of the signed indictment and a list of all of the members of the special grand jury. When the Court ruled on those previous requests, it noted that Defendant had access to the unsigned indictment and that the names of the grand jury members were irrelevant to Defendant's case. ECF No. 125 at 19. To protect the secrecy of the grand jury proceedings, the Court denied the motions. *Id.*

Defendant's suspicion persists. Now, with the assistance of counsel, he argues that discovery tendered so far shows that the Special February 2011-1 Grand Jury (Case Number 10 GJ 437) in this case issued subpoenas as early as April 2010, approximately 26 months before the indictment in this case was filed. Ordinarily, a special grand jury serves for a term of 18 months, although the term can be truncated or extended. 18 U.S.C. § 3331(a). Given that an indictment is invalid if it is returned after the grand jury's term has expired, *see United States v. Bolton,* 893 F.2d 894, 895 (7th Cir. 1990) *(per curiam)*, Defendant argues that he may have grounds to file a Motion to Dismiss. The Federal Rules authorize the Court to order the disclosure of grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FED. R. CRIM. P. 6(e)(3)(E)(ii).

In response, the Government asserts that "[t]he Special February 2011-1 grand jury was originally empaneled in February 2011, and the indictment was returned about 14 months later, well within its 18-

month term." ECF No. 201 at 9.  The Government offers no response to Defendant's idea that the same grand jury may have returned subpoenas in 2010 except to say that "[h]e is wrong."  *Id.*

As to Defendant's first request, the Court has reviewed the original indictment and can verify that it bears the signature of both the grand jury foreperson and the United States Attorney.  To protect the independence of the grand jury and the privacy of the foreperson, the Court is not inclined to reveal a copy of the signed indictment absent a stronger showing by Defendant of a "particularized need" to view the signatures.  *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400 (1959).

Defendant's second request is for disclosure of the grand jury minutes.  The Court, as much as the parties, would like to put this issue to rest.  But the Government's response to the Motion is unsatisfactory to this end.  Defendant has raised the possibility that grounds might exist to dismiss the indictment, but the Government offers no response of any substance.  Therefore, the Government shall submit, for *in camera* review, competent proof that the indictment in this case was returned by a grand jury whose term had not expired.  Such competent proof must reconcile the Government's representation that "[t]he Special February 2011-1 grand jury was originally empaneled in February 2011," ECF No. 201 at 9, with Defendant's contention that "discovery tendered thus far" shows that the Grand Jury "issued subpoenas as early as April of 2010," ECF No. 197, ¶ 4.

## V.  MULTIPLICITY

Defendant has asked the Court to dismiss Count II as duplicative of Count I.  As discussed above, these Counts charge Defendant with bank fraud in violation of 18 U.S.C. § 1344.  Count I is for the $250,000 business loan, and Count II is for the $450,000 business loan.  If these two Counts charge Defendant for a single offense, they would expose Defendant to "the threat of receiving multiple punishment for the same offense." *United States v. Allender,* 62 F.3d 909, 912 (7th Cir. 1995).

The bank fraud statute makes it unlawful to defraud financial institutions or obtain money or other property under the control of a financial institution "by means of false or fraudulent pretenses, representations, or promises."  18 U.S.C. § 1344.  "[T]he bank fraud statute punishes each execution of a fraudulent scheme rather than each act in furtherance of such a scheme."  *United States v. Longfellow,* 43 F.3d 318, 323 (7th Cir. 1994) (internal quotation omitted).  A single scheme may be executed multiple times, but multiple acts are not separate "executions" under the statute unless they are "chronologically and substantively independent and not dependent on another for [their] existence." *Allender,* 62 F.3d at 912.

As mentioned above, the indictment alleges that Defendant submitted an application for two business loans (one for $250,000 and another for $450,000).  To induce the bank to approve the application, he included false personal and business tax returns from

2006 and 2007 that inflated his income. The bank issued the loans, and Defendant eventually defaulted on his obligation to make monthly payments.

The two loans appear to arise from the same transaction. Both loans involve Defendant and Amcore Bank but no third parties, and both loans were funded on July 9, 2008. As best the Court can tell from the indictment, the loans in Counts I and II resulted from a single loan application. Indictment ¶ 3 (alleging that Defendant "submitted to Amcore Bank **an application** for business loans . . . in the amount of $250,000 and $450,000") (emphasis added). In his Reply brief, Defendant represents that "the discovery tendered in this case," including the bank's internal documentation, shows that "the two loans were presented, reviewed, and approved together." ECF No. 204 at 2.

Moreover, Defendant requested the funds so that he could refinance existing loans from two separate banks that held competing security interests in his business assets. *Id.* Neither of the loans from Amcore, on its own, would have been enough to pay off the balance of the existing loans. Defendant needed both loans from Amcore so that he could satisfy the other loans and allow Amcore to take first position. Without that priority status, Amcore likely would not have funded either loan. The Government has not responded to this argument except to say that "the two loans were not dependent on one another." ECF No. 201 at 7-8.

In situations like this one, courts ask whether the loans were independent or whether they relied on each other. *Longfellow,* 43 F.3d at 325 (loans were separate executions where they were funded two years apart). Because the loans were applied for at the same time and funded on the same day, there is no chronological separation between these acts. Moreover, the loans in this case appear to have been a package deal: Amcore would have the proper incentives to approve either loan only if it gave Defendant both loans, which would provide him enough money to pay off the two other banks and give Amcore priority as a secured creditor. Thus, each loan depended on the other for its approval.

The Fifth Circuit faced a similar question in *United States v. Heath,* in which the defendant was charged with two counts of bank fraud after he procured two loans from the same bank. *United States v. Heath,* 970 F.2d 1397, 1401 (5th Cir. 1992). The court noted that the two loans were part of the same scheme to misrepresent the value of real estate that "involve[d] intent to defraud only one bank . . . albeit by procuring two loans." *Id.* at 1402. The court reasoned that the two loans "were integrally related," as both were necessary "for the sole purpose of facilitating the [real estate] sale" and thus "one could not have succeeded without the other." *Id.* The court dismissed the second count of bank fraud as multiplicitous. *Id.* As in *Heath,* the fact that the two loans depended on each other weighs heavily in favor of finding that the loans were not separate "executions" by Defendant.

The Government argues that the two loans are separate "executions" because they had slightly different terms and they exposed the same bank to two distinguishable risks of loss. An identical argument was advanced unsuccessfully in *Heath.* There, the Fifth Circuit explained that "[a]lthough a two-loan scheme may subject an institution to greater risk than a scheme involving only one transaction, it is the execution of the scheme itself that subjects a defendant to criminal liability, not . . . the execution of each step or transaction in furtherance of the scheme." *Heath,* 970 F.2d at 1402. That conclusion accounts for the fact that the bank fraud statute focuses on the defendant's actions and the "execution" of a scheme, not necessarily the effect of those actions on the bank. *Longfellow,* 43 F.3d at 323; *see also, United States v. Anderson,* 188 F.3d 886, 888 (7th Cir. 1999) (explaining that "the crime of bank fraud is complete when the defendant places the bank at a risk of financial loss, and not necessarily when the loss itself occurs"). In any event, the Court does not perceive a meaningful difference between the risk of loss associated with one $700,000 loan and that associated with two smaller loans, say for $250,000 and $450,000, when offered to the same person at the same time. Thus, the fact that Defendant obtained two loans is insufficient to sustain Count II.

Ultimately, Defendant is alleged to have submitted to Amcore Bank a single package of documents with a variety of misrepresentations about his finances. Though he induced the bank to

give him two loans, those loans were approved and funded together. The two loans depended on each other because the bank could not obtain first priority if it approved only one loan. Thus, Defendant's actions formed a single "execution" under the bank fraud statute, and Count II must be dismissed as multiplicitous. *See also*, *United States v. Lilly,* 983 F.2d 300, 302 (1st Cir. 1992) (multiple charges of bank fraud were multiplicitous where the defendant sent "to a single bank a single package of documents that consistently misstated a single material fact in order to obtain a single loan, the proceeds of which funded a single real estate purchase").

## VI.  CONCLUSION

For the reasons stated herein, Defendant's Motion to Sever [ECF No. 195] is granted.  Defendant's Motion for Disclosure of Exculpatory and Impeaching Evidence [ECF No. 196] is denied. Defendant's Motion for Disclosure of Signed Indictment and Grand Jury Minutes [ECF No. 197] is granted in part.  Defendant's Motion to Dismiss Count II of the Indictment [ECF No. 198] is granted.

**IT IS SO ORDERED.**

_____
         Harry D. Leinenweber, Judge
         United States District Court

Date:      August 14, 2014