IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,              Case No. 12 CR 445

          v.                                Judge Harry D. Leinenweber

MICHELE DICOSOLA,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Michele DiCosola's ("DiCosola") post-trial Motions for (1) Acquittal Notwithstanding the Jury's Verdict [ECF No. 243], (2) a New Trial [CF No. 242], and (3) to Dismiss the Indictment [ECF No. 241]. For the reasons stated herein, the Motions are denied.

## I.  BACKGROUND

Following a three-day trial, a jury found DiCosola guilty of bank fraud in violation of 18 U.S.C. § 1344, giving false statements to a bank in violation of 18 U.S.C. § 1014, and wire fraud in violation of 18 U.S.C. § 1343. The Government's theory of the case was simple. The Government introduced evidence that DiCosola filed tax returns for the 2006 and 2007 tax years that reflected an adjusted gross income of $4,024.00 and $54,118.00, respectively. DiCosola sought loans for his business, but at

least one bank denied his loan due to insufficient income. In response, DiCosola had his accountant, John Cerami ("Cerami"), prepare new returns that reflected income of more than $300,000.00 for the 2006 tax year and more than $350,000.00 for the 2007 tax year. DiCosola then submitted these new returns to the victim banks and ultimately received the loans, but he never filed those new returns or any amendments to his previous returns with the IRS.

According to the Government, DiCosola cooked up the new returns with false and inflated income in order to influence the banks' decisions in giving him loans he otherwise did not qualify for. These false returns formed the bases for the bank fraud and false statements to a bank charges, and the faxes he sent to the banks that included the false returns formed the basis for the wire fraud charges. DiCosola now moves for acquittal, a new trial, and to dismiss the indictment. The Court will discuss each Motion in turn.

## II.  LEGAL STANDARD

DiCosola was convicted by a jury, and jury verdicts are entitled to "[g]reat deference." *United States v. Phillips,* 239 F.3d 829, 842 (7th Cir. 2001). Thus, the Court may only set aside a jury verdict when "the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). In order for a defendant to prevail, he must prove that "no rational trier of

fact could have agreed with the jury." *Coleman v. Johnson,* 132 S. Ct. 2060, 2062 (2012). In deciding these Motions, the Court must view the evidence and draw reasonable inferences in the light most favorable to the Government. *United States v. Villegas,* 655 F.3d 662, 668 (7th Cir. 2011).

### III. <u>ANALYSIS</u>

#### A. Motion for Acquittal

DiCosola's first Motion is for acquittal notwithstanding the guilty verdict. He argues first that the Government did not present sufficient evidence that the new returns were actually false. According to DiCosola, the evidence at trial established that the revised numbers reflected in the new returns were accurate because they were based on sound accounting principles such as recalculating depreciation and spreading cost over time.

DiCosola is correct to a certain extent; he did present evidence that would have allowed a jury to find that the revised returns did not contain false numbers. But the issue is not whether DiCosola presented evidence that the jury could have believed, the issue is whether there is *any* evidence that justifies what the jury actually believed. *See, United States v. Starks,* 309 F.3d 1017, 1021 (7th Cir. 2002). This is a classic case of both sides presenting sufficient evidence that would have allowed the jury to conclude either way. Unfortunately for DiCosola, the jury believed the Government and

found that the returns were indeed false, and there is ample evidence to support that verdict.

DiCosola's Motion largely overlooks the evidence the Government presented at trial and the reasonable inferences the jury was permitted to draw from that evidence. The Government presented DiCosola's IRS tax returns and the returns he submitted to the banks. The returns he submitted to the banks reflected income that he did not report to the IRS. The Government also called an IRS agent who testified regarding DiCosola's financial status during the tax years in question and leading up to the loans he obtained. The witness showed that DiCosola's business accounts were often overdrawn and reflected little income going into the accounts outside of loan proceeds. DiCosola characterizes this evidence as showing only that he was "cash poor," but that is only one spin on the evidence. The evidence also supports a finding that DiCosola did not in fact make the money he claimed on his new returns because his accounts during the years in question do not show anywhere near the $300,000.00 to $350,000.00 as stated in his new returns. The Government argued that the state of DiCosola's failing business, which he must have known about as its owner, combined with his need for significant loans, provided motive for him to fabricate inflated returns so the victim banks would provide him loans that his actual income would not support. Because the

jury could have believed either side's version, the Court cannot conclude that it was irrational for the jury to believe the Government's version.

In arguing that the Government failed to show that the new returns were false, DiCosola also relies on the testimony of Cerami, his accountant. Cerami, a defense witness, testified in part that the revised income figures were the result of preparing "amended" tax returns after applying legitimate accounting principles and thus were not false at all. Once again, the fact that DiCosola presented a defense that the jury might have believed does nothing to upset the jury's actual verdict in this case. Cerami also testified that the returns he prepared for DiCosola were "hypothetical" returns and that DiCosola gave him no documentation to support the income stated in the returns. He also testified that he did not check the proper box that would indicate the returns were meant to be "amended" returns. Finally, the Government demonstrated, and DiCosola concedes, that DiCosola never filed amended returns. Cerami's testimony was, at best, inconsistent. The jury might have credited none of his testimony, only the testimony that supported DiCosola, or only the testimony that supported the Government. Because the Court must view the evidence in the light most favorable to the Government, the Court has no choice but to conclude that the jury either ignored Cerami's testimony

or credited only those portions that supported the Government's case. Either way, Cerami's testimony does not justify acquittal.

DiCosola next argues that acquittal is appropriate here because the Government failed to prove materiality — that is, the false tax returns were "capable of influencing" the bank. Seventh Circuit precedent is clear on this point: "A statement is material if it would be capable of influencing the decisionmaker's decision; as we have said, there is no requirement that the statement must in fact influence the decisionmaker (that would be reliance)." *United States v. Reynolds,* 189 F.3d 521, 525 (7th Cir. 1999). When analyzing materiality, "the proper inquiry is not the defendant's ability to influence, but rather the nature of the statements made." *Id.*

DiCosola argues that neither bank could have possibly been "fooled" for a variety of reasons, but the Court notes at the outset that the Government did not have to prove that the false statements could "fool" a bank. The inquiry is about the "nature of the statements made" and whether they could influence the bank's decision to provide DiCosola a loan. *See, id.* The Court therefore rejects DiCosola's arguments that go to whether the statements could have actually fooled the banks.

As to his remaining argument, DiCosola asserts that the Government did not present sufficient evidence that the false statements were capable of influencing the banks primarily because the Government did not call the actual underwriter who approved DiCosola's specific loans. For the CitiMortgage loan, the Government called a CitiMortgage employee who was familiar with DiCosola's loan but did not recall whether she was the underwriter who ultimately signed off on his loan. For the Amcore loan, the Government called a bank representative who ultimately recommended denying DiCosola's loan but was overruled. According to DiCosola, these witnesses were not enough to demonstrate that his false statements were capable of influencing the bank's decisions.

DiCosola's argument fails because he takes a short-sided view of the evidence in his own favor while ignoring the reasonable inferences that the jury could have drawn in the Government's favor. First, the CitiMortgage representative, Misty Martinsen ("Martinsen"), testified that, although she could not recall whether she ultimately signed off on DiCosola's loan, she worked on his loan and was very familiar with CitiMortgage's lending practices. Martinsen testified that when she first reviewed DiCosola's loan, she refused to approve the loan on a "stated income" basis; instead, she counteroffered with a requirement that DiCosola provide prior years' tax

returns to prove his income.  DiCosola ultimately submitted the false returns, and the loan was approved.  Martinsen testified that, regardless of whether she was the underwriter who approved the loan, DiCosola's tax returns "would have been very important" to CitiMortgage's decision.

Second, the Amcore representative, Denise Devitt ("Devitt"), testified that she initially recommended that DiCosola's loan be declined, but she was overruled, presumably by her superiors.  She testified that the false tax returns were "critical" in the decision to override her denial recommendation.  In both instances, this is more than enough for a jury to conclude that the false returns were capable of influencing the victim banks.

DiCosola responds, however, that the jury was only speculating as to whether the false returns were capable of influencing the banks' decisions.  DiCosola argues that because Martinsen only testified as to what "would have" been important, not what was actually was important, the Government presented no evidence that the returns were capable of influencing CitiMortgage.  But testimony about what a bank "would have" relied on in approving loans, coming from an experienced bank representative who routinely approved or denied loans for CitiMortgage, provides sufficient evidence for a jury to draw a reasonable inference that the statement was indeed capable of

influencing CitiMortgage.    The same is true for Devitt, who testified regarding the importance of the tax returns in ultimately approving DiCosola's Amcore loan.

Moreover, juries do not reach verdicts in a vacuum, and they are credited with common sense.  *United States v. Vega,* 860 F.2d 779, 794 (7th Cir. 1988) ("Juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict.") (internal quotation marks omitted), *abrogated on other grounds by United States v. Durrive,* 902 F.2d 1221 (7th Cir. 1990).  It is no secret that banks rely on the amount of money a person makes in order to determine whether to approve a loan.  Otherwise, why else would banks ask for income documentation like they did in DiCosola's case?  The jury's own common sense plus the testimony from the banks' representatives are enough for the jury to reasonably conclude that DiCosola's inflated tax returns had the ability to influence the banks' decisions.

DiCosola finally argues that there is insufficient evidence to support the wire fraud charge.  The Court instructed the jury regarding the wire fraud charge as follows:

> In order to cause interstate wire communications to take place, the defendant need not actually intend that use to take place.  You must find that the defendant knew this use would actually occur, or that the defendant knew that it would occur in the ordinary course of business, or that the defendant knew facts from which that use could reasonably have been

> foreseen. However, the government *does not have to*
> *prove that the defendant knew that the wire*
> *communication was of an interstate nature*.

(Jury Instruction 23, ECF No. 226) (emphasis added). DiCosola argues that the Government failed to prove that he knew the faxes he sent would actually travel across state lines, but DiCosola's argument misses the mark. The Seventh Circuit, as well as the plain language of the jury instruction itself, make clear that a defendant need not know that the wire cross state lines. *United States v. Lindemann,* 85 F.3d 1232, 1241 (7th Cir. 1996). The Government introduced unrebutted evidence that DiCosola himself sent the fax that contained the false tax returns. Thus, the jury was reasonable in concluding that DiCosola knew about the fax he himself sent. Whether he knew that the fax would cross state lines is irrelevant. *See, id.*

For all these reasons, DiCosola's Motion for Acquittal is denied.

### B.  Motion for a New Trial

DiCosola presents seven arguments for why the Court should grant him a new trial. The seventh argument, however, largely overlaps with DiCosola's Motion to Dismiss the Indictment. The Court will therefore discuss DiCosola's seventh argument in the context of the Motion to Dismiss rather than duplicating that discussion in this section. The Court will discuss the remaining six arguments separately below.

## 1. *Evidentiary Issues Related to Emails*

DiCosola's first argument is that the Court erred in excluding certain hearsay emails between DiCosola and Amcore while allowing the Government to introduce an email DiCosola sent to Amcore. The Court can quickly dispose of this argument because it simply followed the rules of evidence in excluding DiCosola's proffered evidence, despite allowing the Government to introduce similar evidence. The Court excluded the emails because DiCosola offered them as business records when they clearly were not. Rule 803(6) is an exception to hearsay that allows out of court statements to be admitted if "the record was made at or near the time by . . . someone with knowledge," and "the record was kept in the course of a regularly conducted activity of a business." In trying to demonstrate that the emails in question were business records, DiCosola's attorney asked Devitt, the Amcore bank representative, whether the "correspondences with Mr. DiCosola or his accountant, would those [be] types of communications retained in a loan file?" Devitt responded, "I don't — I don't honestly know." The Court excluded the emails because DiCosola could not establish that they were business records. The Court, however, allowed the Government to introduce a similar email that DiCosola sent to the bank, but that was admissible under Rule 801(d)(2) as an

"opposing party's statement," not as a business record under
Rule 803(6).

## 2. *Failing to Correct False Testimony*

DiCosola's second argument for a new trial is that the
Government knew that one of its witnesses gave false testimony
and yet failed to correct it, in violation of *Napue v. Illinois,*
360 U.S. 264 (1959). *Napue* "stands for the proposition that
prosecutors may not suborn perjury." *United States v. Are,* 590
F.3d 499, 509 (7th Cir. 2009) (internal quotation marks
omitted). A "conviction obtained through the use of false
evidence, known to be such by representatives of the State, must
fall under the Fourteenth Amendment." *Id.* (internal quotation
marks omitted).

The testimony in question involves Chad Troutwine
("Troutwine"), the Government's witness and a CitiMortgage
employee. Troutwine testified that DiCosola received about
$273,000.00 in cash from the CitiMortgage loan proceeds, but
that turned out to be false. The next witness to testify was
the CitiMortgage lending officer who dealt with DiCosola, Cheri
Hanson ("Hanson"), who explained that DiCosola received no
actual cash from the loan because the proceeds all went to pay
off prior loans. DiCosola argues that the Government's failure
to correct Troutwine's testimony violates *Napue*.

DiCosola's argument fails because he has not shown that the Government "knowingly rel[ied] on false statements." *See, id.* The record is clear that Troutwine's testimony was based on a reasonable reading of a document submitted into evidence, and the Government does not appear to have knowingly suborned perjury. Moreover, the Government made no further attempts to argue that DiCosola in fact received cash from the loans. And, most importantly, the Government did not mention Troutwine's misstatement during its closing. *See, id.* at 509-10 ("Nor did the government knowingly rely on false statements in the AUSA's closing arguments."). DiCosola has thus failed to demonstrate a *Napue* violation requiring a new trial.

### 3. The Government's Rebuttal Arguments

DiCosola's third argument for a new trial is that the Government's rebuttal was improper and prejudicial. First, DiCosola argues that the Government ran afoul of proper rebuttal by "repeatedly intimat[ing] that defense counsel was a liar, and so was DiCosola." (Def.'s Mot. for New Trial, ECF No. 242 at 7). Second, DiCosola argues that the Government shifted the burden of proof to DiCosola when it referenced DiCosola's ability to call a witness that DiCosola accused the Government of not calling. Third, DiCosola argues that the Government robbed him of his right to put on a defense when it characterized his defenses as "lame" and simply "excuses."

As to DiCosola's first improper rebuttal argument, DiCosola takes issue with the following argument during the Government's closing:

> And while we're on this topic, the defense attorney was — he kind of was changing the legal standard as he was speaking. He first said it correctly when he quoted my colleague, Ms. Frimpong, and said we have to prove that it was capable of influencing the bank. That's what materiality means, capable of influencing.
>
> So think about it. Does multiplying your income by 77 times what it actually is or in other years five or eight times what it actually is, is that capable of influencing the bank?  Absolutely.
>
> But then he was changing it to say, capable of fooling the bank. That's not the standard. We don't have to prove that they fooled the bank.  You're not going to see that in the jury instructions from Judge Leinenweber.  The jury instruction will be, capable of influencing.

(Trial Tr. at 591).  DiCosola views this argument as "impl[ying]" that his attorney was a "liar."  But the Government did not use the word "liar" in referring to defense counsel and was simply latching on to DiCosola's attorney's misstatement of the legal standard.  DiCosola has pointed to no authority that would prohibit the Government from arguing the correct legal standard to the jury and pointing out that the defense's statement of the standard was incorrect.

DiCosola also takes umbrage with the number of times the Government used the word "lie" in its closing, arguing that this amounted to calling DiCosola a "liar" in general.  But this is a wire and bank fraud case alleging that DiCosola lied to the

banks in order to get loans, and there is sufficient evidence to support the jury's verdict, as discussed above. The Government's case hinged on demonstrating that the tax returns DiCosola submitted to the banks were false; thus, the Government did not engage in improper rebuttal in referring to DiCosola's specific acts as "lies." Indeed, it would be difficult for the Government not to use the word "lie" in trying to prove its case that DiCosola lied to the banks. Moreover, although the Government did call DiCosola a "liar," it was in context of this specific case. The Government said, "Well, [DiCosola's attorney] was right that this was a liar's loan. The defendant was the liar. He was the one who lied on this application when he said his income was . . . in excess of $20,000 a month." (*Id.* at 600). Thus, the Government was not trying to obtain a conviction based on DiCosola's general character as a "liar," but rather as a result of his lying on the particular loan applications in question.

As to his second improper rebuttal argument, DiCosola asserts that the Government shifted the burden to him when it commented on DiCosola's power to call a witness. The Government's comment was in response to DiCosola's argument that the Government "never called any underwriters from Amcore Bank, so we don't know who made the decision. . . . So that evidence was missing from this government's case here." (*Id.* at 579).

The Government responded as follows: "Well, the burden rests on this table the entire time. It's our burden to prove these charges. But they have subpoena power, too. . . . Well, if this witness was so important to them, they could have subpoenaed that witness too." (*Id.* at 590).

DiCosola acknowledges that, generally, the Government is allowed to comment on the defense's ability to subpoena a witness. *See, United States v. Sblendorio,* 830 F.2d 1382, 1393–94 (7th Cir. 1987) ("The jury is entitled to know that the defendant may compel people to testify; this legitimately affects the jury's assessment of the strategy and evidence."). But there is an exception to this rule that applies when the missing witness is "peculiarly within the government's power to produce." *United States v. Knox,* 68 F.3d 990, 1000–01 (7th Cir. 1995). DiCosola argues that this exception applies to the banks' representatives, but he has failed to establish that any bank representatives were in fact under governmental control. A witness is under governmental control if the government has physical control over the witness or the witness's relationship with the government is such that witness's testimony is, "in pragmatic terms, only available to [the Government]." *See, United States v. Rollins,* 862 F.2d 1282, 1297–98 (7th Cir. 1988). The classic examples of witnesses that are within governmental control are current or former police officers. *Id.*

In *Knox,* the Seventh Circuit acknowledged that "[e]ven government informants are not peculiarly within the government's control if the defendant can subpoena them as witnesses." *Knox,* 68 F.3d at 1001. If informants do not qualify as peculiarly within government control, certainly a private bank's employee is not under government control. Thus, DiCosola's argument on this point fails.

DiCosola's final improper rebuttal argument is that the Government robbed him of his right to put on a defense by calling his defenses "excuses" and "lame." But the Seventh Circuit has previously allowed the Government to characterize defenses as "lame." *See, Sblendorio,* 830 F.2d at 1395. The prosecutor did wander toward the line in comparing DiCosola's defenses to the "lame" excuses his daughter gives him for why she does not want to brush her teeth, but nothing in that statement rises to the level of impropriety that would justify a new trial. *Cf. id.* at 1395–96 (finding a prosecutor's statements "inappropriate" and "unprofessional" when the prosecutor clearly implied that "only guilty people stand trial").

### 4. *Jury Instruction on Materiality*

DiCosola's fourth argument for a new trial is that the jury instructions on materiality and the victim's knowledge were

confusing and misleading. The Court gave the following instruction over DiCosola's objection:

> A false or fraudulent pretense . . . is 'material' if it is capable of influencing the decision of the person to whom it is addressed. It is not necessary that the false . . . pretense . . . actually have that influence or be relied on by the alleged victim, as long as it is capable of doing so.

(Jury Instruction 18, ECF No. 226). DiCosola objects to the second sentence regarding actual reliance because, according to him, that sentence "effectively nullified [his] trial defense on the element of materiality." (Def.'s Mot. for New Trial, ECF No. 242 at 10). This is so, DiCosola claims, because his defense was that the banks knew that his inflated returns were revised numbers and thus they were not capable of influencing the banks' decisions. The Court disagrees, because the jury instruction is a proper statement of the law and it still allowed the jury to accept DiCosola's defense if it wanted. The instruction only says that the government does not have to prove that the bank actually relied on the false pretense. This does not mean, however, that the jury could not have accepted DiCosola's defense. To borrow a phrase from the First Amendment context, there is some "play in the joints" between the Government not having to prove reliance and the defendant still being able to demonstrate that the statement was incapable of influencing the bank's decision. Put another way, the jury

could have faithfully followed this instruction but still found that, because the banks knew that the returns were not an accurate reflection of DiCosola's income, the returns were not capable of influencing their decision. The instruction does not, as DiCosola puts it, "invite[] the jury to ignore [his] defense." (*Id.* at 11).

### 5. *Failure to Strike an Attorney-Juror*

DiCosola's fifth argument for a new trial is that the Court erred by not dismissing a juror *sua sponte* because the juror was a civil litigation attorney who had appeared before the Court in an unrelated matter for a status hearing. DiCosola points to nothing in the record, however, that suggests the juror was not truthful when he said "no" after the Court asked if there was "[a]ny reason [he] couldn't be a fair and impartial juror." (Trial. Tr. at 93). Moreover, DiCosola did not move to strike this juror for cause, nor did he use a peremptory strike. DiCosola also cites no authority in arguing that the Court erred by not automatically striking a civil attorney solely because that attorney had appeared before the Court for a brief status hearing. Nor has DiCosola presented any evidence that civil attorneys are inherently biased against criminal defendants because they have appeared before the Court for a status hearing. Simply put, DiCosola has not made any showing that

this juror's presence on the jury somehow casts a shadow on the verdict's legitimacy.  This argument must therefore be rejected.

### 6. *Issues with the Indictment*

DiCosola's sixth argument for a new trial is that the indictment was defective because there was "no record of the proceedings where indictment was returned and the warrant was issued for his arrest." (Def.'s Mot. for New Trial, ECF No. 242 at 12).  The Court has already considered and rejected DiCosola's request for the Government to turn over grand jury evidence.  Additionally, the Court ordered the Government to submit evidence for *in camera* review to establish that the indictment was returned by a grand jury whose term had not expired.  The Court reviewed the evidence and found that "the indictment of the Defendant was returned within [the grand jury's] term."  (Court's Order Dated 9/8/2014, ECF No. 217).  The Court again denies DiCosola's request for the Government to disclose this evidence.

Because none of DiCosola's arguments support granting a new trial, the Court denies the Motion.

### C. Motion to Dismiss the Indictment

DiCosola's final Post-Trial Motion is to dismiss the indictment.  According to DiCosola, the Government violated DiCosola's Fifth Amendment right to due process "by presenting knowingly false evidence to the indicting Grand Jury and by

inducing Cerami to give false evidence to the Grand Jury which the Government used to discredit Cerami at trial." (Def.'s Reply in Supp. of Mot. to Dismiss, ECF No. 254 at 1). DiCosola's Motion rests on the testimony of Cerami, who testified before the grand jury, and at times during DiCosola's trial, that DiCosola's inflated returns were "hypothetical" returns. DiCosola accuses the Government of "inducing" this testimony through the use of altered returns that gave Cerami reason to doubt the returns' legitimacy. DiCosola claims that the Government knew that Cerami's testimony was a lie and yet still used it to obtain an indictment.

DiCosola's argument here fails at the outset for two key reasons. First, Cerami's testimony was not necessary for the Government's case. As discussed above, there is sufficient evidence to support the jury's verdict in this case, even if it totally discredited all of Cerami's testimony as unreliable. This shows that Cerami was not crucial to the Government's case, which means that the Government would have obtained an indictment even if it had not "induced" Cerami into giving allegedly false testimony. The Government did not even call Cerami as a witness in its case in chief. All of this shows that, even if Cerami's grand jury testimony was false, it did not prejudice DiCosola. *See, Bank of Nova Scotia v. United States,* 487 U.S. 250, 254 (1988).

In response, DiCosola emphasizes the importance of Cerami as a defense witness and argues that he was prejudiced because the grand jury testimony eviscerated a key defense. DiCosola argues that the Government needed Cerami's testimony to foreclose this defense in order to obtain an indictment. But that is not the law, and DiCosola has not cited any authority to support the notion that the Government must discredit all available defenses in obtaining an indictment. Thus, Cerami's grand jury testimony, even if false, did not prejudice DiCosola in a way that justifies dismissing the indictment.

The second reason DiCosola's argument fails is because the jury in this case actually convicted him, which "renders harmless any possible error in the grand jury proceedings." *United States v. Morgan,* 384 F.3d 439, 443 (7th Cir. 2004). Certainly there are exceptions to this rule, such as when the evidence that allegedly tainted the grand jury proceedings also tainted the jury's verdict. *See, United States v. Hogan,* 712 F.2d 757, 762 (2d Cir. 1983). But, as discussed above, the trial here resulted in sufficient evidence to support the jury's verdict even the jury ignored all of Cerami's testimony. "It is impossible to imagine evidence sufficient to produce a conviction at trial that would not also produce an indictment." *United States v. Fountain,* 840 F.2d 509, 514 (7th Cir. 1988).

For these reasons, DiCosola's Motion to Dismiss the Indictment is denied.

## IV. CONCLUSION

For the reasons stated herein, DiCosola's Motions for Acquittal [ECF No. 243], a New Trial [ECF No. 242], and to Dismiss the Indictment [ECF No. 241] are denied.

**IT IS SO ORDERED.**


_____
        Harry D. Leinenweber, Judge
        United States District Court

Dated:5/14/2015