```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | Case No. 12 CR 446 |
| v. | Judge Harry D. Leinenweber |
| **MICHELE DICOSOLA,** | |
| Defendant. | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Michele Dicosola's Motions for Judgment of Acquittal, or alternatively, for a New Trial [ECF No. 297]. For the reasons stated herein, Defendant's Motions are denied.

### I.  BACKGROUND

In February 2009, Defendant filed tax returns for himself and his wife Paula Wrobel that claimed substantial refunds based on an Original Issue Discount ("OID") tax theory. Under the OID theory, Defendant claimed he was entitled to recover a credit from the Government based on his mortgages, loans, lines of credit, and bank deposits with commercial banks dating back three years. These transactions, which he listed in Schedule B of his return, totaled $8.4 million. He submitted an IRS Form 1099-OID for each transaction, claimed the entire $8.4 million as interest income, subtracted the taxes he owed on it (about $2.9 million), and finally

claimed that he was owed a $5.5 million refund. Defendant followed the same process for his wife's refunds, except her numbers were smaller. Her Schedule B total was about $600,000, and her claimed refund was about $385,539.

Though Defendant had hired certified public accountant Steven Simons to prepare his and his wife's tax returns in the past, he chose not to consult with Mr. Simons before filing the 2008 returns.

Defendant's returns were easily flagged as frivolous and were received by the frivolous filing department on March 9, 2009. Defendant subsequently resubmitted them numerous times in a continued effort to obtain the claimed refunds. Ultimately, Defendant was charged with, among other things, two counts of making false claims against the United States, in violation of 18 U.S.C. § 287.

At trial, the Government showed that upon receiving Defendant's tax returns claiming massive refunds, the IRS advised Defendant that his returns were frivolous and explained the possible fines and criminal penalties for filing frivolous returns. Nonetheless, Defendant chose to resubmit the returns numerous times without making any changes to the claimed refunds. On or about September 15, 2009, Defendant sent the returns directly to the IRS's Frivolous Return Program, and it was this filing that was charged in the Complaint. On June 26, 2015, following a two-day bench trial, this

Court convicted Defendant of both counts of making false claims against the United States.

## II. JUDGMENT OF ACQUITTAL

### A. Legal Standard

Motions of acquittal will be granted only where "the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). In reviewing the evidence presented at trial, the Court "view[s] all the evidence and draw[s] all reasonable inferences in the light most favorable to the prosecution." *United States v. Gallardo,* 497 F.3d 727, 737 (7th Cir. 2007) (quoting *United States v. Hicks,* 368 F.3d 801, 804-05 (7th Cir. 2004)). The Court will "overturn a guilty verdict only when the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Starks,* 309 F.3d 1017, 1021 (7th Cir. 2002). A conviction will be affirmed "so long as any rational trier of fact could have found the defendant to have committed the essential elements of the crime." *United States v. Pust,* 798 F.3d 597, 600 (7th Cir. 2015).

Defendant makes two arguments in support of his Motion for Acquittal. First, Defendant argues that the Government failed to prove that he knew his claims were false or that he acted with intent to defraud. Second, Defendant contends the Government failed to prove that he made a "claim upon or against the United States." The Court will address each argument in turn.

## B. Analysis

### *1. Knowingly False Claim*

Defendant first argues that he is entitled to acquittal as a matter of law because the Government failed to prove that he knew his tax returns were false or that he intended to defraud the government. Defendant challenges the Court's reliance on what he characterizes as "ambiguous" circumstantial evidence to conclude that Defendant knew his claims were false, and argues that the Court ignored "extensive direct evidence" showing that Defendant truly believed his claims were accurate.

In viewing the evidence presented at trial, the Court was free to weigh the evidence and "choose among various reasonable constructions" thereof. *Starks,* 309 F.3d at 1022. Ultimately, the Court was not persuaded by the direct evidence Defendant submitted to show that he truly believed his claims were accurate. Moreover, contrary to Defendant's assessment, "[c]ircumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable." *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997) (quoting *United States v. Rose,* 12 F.3d 1414, 1420 (7th Cir. 1994)).

The Court's conclusion that Defendant knew the claims were false is supported by the following evidence: (1) the incredible value of the claimed refunds; (2) Defendant's poor financial predicament and motive to get money from an illegal source; (3)

Defendant's professional and financial sophistication; (4) Defendant's knowledge of the OID theory; (5) Defendant's decision not to have an accountant review the returns despite a history of doing so in the past; and (5) the repeated notices Defendant received from the IRS that the returns were frivolous. Although each individual circumstance relied on by the Court, when viewed alone, may not have been enough to establish knowledge beyond a reasonable doubt, the evidence when taken as a whole, and viewed in the light most favorable to the Government, supports the conclusion that Defendant knew the claims were false.

"It is implicit in the filing of a knowingly false claim that the claimant intends to defraud the government." *United States v. Catton,* 89 F.3d 387, 392 (7th Cir. 1996). Thus, because there is sufficient evidence to conclude that Defendant filed "a knowingly false claim," the Court can infer that, by filing the claims, Defendant intended to defraud the government.

### *2. Claim upon or against the United States*

Defendant next argues the Government failed to prove that he submitted claims to the government on or about September 15, 2009, as charged in the indictment. Defendant contends that the September mailing of the tax returns to the IRS's Frivolous Return Program does not amount to a "claim" within the meaning of § 287 because a "claim" must seek monetary payment and have the potential to cause the government to pay the amount sought. Defendant argues that the

tax returns did not have the potential to cause the government to pay the amount sought, and therefore cannot be claims, because they were sent to the Frivolous Return Program — an agency that Defendant asserts would never payout a return. The Court is not persuaded.

Defendant cites *United States v. McBride,* 362 F.3d 360 (6th Cir. 2004), to support his position that a claim must seek monetary payment and be capable of being paid out. In *McBride,* the defendant sent the IRS a bad check to pay an outstanding tax liability owed by another individual. *Id.* at 369. The *McBride* court correctly held a bad check was "not [an] attempt to elicit a payment from the IRS. . . ." *Id.* at 370. The court reached this conclusion based on the definition of a claim as an "unjustified demand for money or property." *Id.* at 371. Clearly, a check, which is a form of payment, cannot be classified as a demand for money.

Here, the "claim" at issue is a tax return. A tax return, unlike the check at issue in *McBride,* is not a form of payment. It is a demand for money from the government in the form of a tax refund. Thus, Defendant's tax returns were claims within the meaning of § 287.

Defendant's argument regarding the specific department to which he sent the forms is similarly unavailing. The statute criminalizes the making or presentation of "any claim upon or against the United States or *any* department or agency thereof." 18 U.S.C. § 287 (emphasis added). All § 287 requires is that a claim is sent to *any*

department or agency of the United States. 18 U.S.C. §287. Thus, it does not matter to which department Defendant sent the return, or the function of that department. Therefore, the Court rationally concluded that by sending his tax returns to the IRS Frivolous Return Program — a "department" of an agency of the United States — Defendant made "a claim upon or against the United States."

Defendant also contends that § 287 requires the claims to be material, and that because the IRS Frivolous Return Program could not payout on the tax returns, his claims could not be material. The Supreme Court has not required claims to be material. But even if materiality were required, the Government introduced testimony at trial indicating that the IRS had paid fraudulent OID refunds in the past. In viewing this evidence in the light most favorable to the Government, it is rational to conclude that Defendant's tax returns were material claims because they were capable of influencing the IRS.

Thus, the Government sufficiently established that Defendant submitted claims he knew to be false to the government on or about September 15, 2009 in violation of 18 U.S.C. § 287.

### III. MOTION FOR NEW TRIAL

#### A. Legal Standard

Courts have the discretion to grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a). The motion may be granted only if "the verdict is against the manifest weight

of the evidence. . . . ." *United States* v. *Washington,* 184 F.3d 653, 657 (7th Cir. 1999). Such motions are granted in "only the most 'extreme cases.'" *United States v. Linwood,* 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States v. Morales,* 902 F.2d 604, 605 (7th Cir. 1990)).

## B. Analysis

Defendant first claims that he is entitled to a new trial because the Court did not consider certain exhibits admitted into evidence. This case was heard as a bench trial. The Court, as the trier of fact, actively and attentively reviewed all the evidence as it was presented during the two-day trial. The Court heard substantial testimony relating to Defendant's state of mind and the information he learned at the seminars on the OID theory. Defendant argued consistently throughout trial that he followed the seminar materials and that this information crafted his state of mind. In making these arguments, Defendant emphasized the various exhibits that supported this conclusion. Thus, the Court did not err in failing to review this evidence again during its deliberations. *Cf. Deicher v. City of Evansville,* 545 F.3d 537, 542 (7th Cir. 2008) ("It is within the trial court's discretion to determine which exhibits are provided to the jury during deliberations."); *United States v. Collins,* 604 F.3d 481, 489 (7th Cir. 2010) (The "failure to make an exhibit available . . . during deliberations is no cause

for a mistrial, particularly when the trial was short and the information . . . should be fresh in the [trier of fact's mind].").

Next, Defendant argues that the Court erred in overruling his objections to the Government's reference during closing arguments to statements Defendant made in his communications with the IRS. The evidence presented at trial included five months of Defendant's correspondence with the IRS. The Government's highlighting of comments Defendant made during these communications in closing arguments may have been prejudicial to Defendant's cause, but doing so was not unfair. Defendant's state of mind was at issue throughout trial. It was not improper, let alone unfairly prejudicial, for the Government to ask the Court to consider Defendant's own words when evaluating his state of mind. *See, United States v. Corley,* 519 F.3d 716, 727 (7th Cir. 2008) (Misconduct in a closing argument is reviewed to determine "first whether the challenged remark by the prosecutor was improper, and second, whether it prejudiced the defendant."). Thus, the objections were properly overruled.

Finally, Defendant contends that the Court improperly excluded the lay opinion evidence of his wife, Paula Wrobel. Lay opinion testimony is admissible if "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED R. EVID. 701. During her testimony, Ms.

Wrobel was allowed to testify about Defendant's interactions with the IRS, his research on the OID theory, and his consultations with other individuals regarding the OID theory. This testimony sufficiently described Defendant's deliberation on the OID theory and enabled the Court to determine Defendant's state of mind. Therefore, Ms. Wrobel's lay opinion of her husband's state of mind regarding the OID theory would not have been helpful to the Court, and the evidence was properly excluded.

## IV. CONCLUSION

Contrary to Defendant's arguments, the evidence at trial demonstrated his guilt beyond a reasonable doubt. Defendant has not identified any errors requiring a new trial. Thus, for the reasons stated herein, Defendant's Motions for Acquittal or Alternatively for a New Trial [ECF No. 297] are both denied.

**IT IS SO ORDERED.**

    Harry D. Leinenweber, Judge
    United States District Court

Dated: January 29, 2016